# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

NEVADA IRRIGATION DISTRICT, 1036 W. Main Street, Grass Valley, CA 95945,

      Plaintiff,

v.

EILEEN SOBECK, Executive Director of the California State Water Resources Control Board, 1001 I Street Sacramento, CA 95814, in her official capacity,

E. JOAQUIN ESQUIVEL, Chair of the California State Water Resources Control Board, 1001 I Street Sacramento, CA 95814, in his official capacity,

DORENE D'ADAMO, Vice Chair of the California State Water Resources Control Board, 1001 I Street Sacramento, CA 95814, in her official capacity,

TAM M. DODUC, Member of the California State Water Resources Control Board, 1001 I Street Sacramento, CA 95814, in her official capacity,

SEAN MAGUIRE, Member of the California State Water Resources Control Board, 1001 I Street Sacramento, CA 95814, in his official capacity,

LAUREL FIRESTONE, Member of the California State Water Resources Control Board, 1001 I Street Sacramento, CA 95814, in her official capacity,

and CALIFORNIA STATE WATER RESOURCES CONTROL BOARD, 1001 I Street Sacramento, CA 95814,

      Defendants.

Civil Action No. _____

**COMPLAINT**

## I.    NATURE OF THE ACTION

1.    Plaintiff Nevada Irrigation District ("NID" or "District") is the owner, operator, and Federal Energy Regulatory Commission ("FERC") licensee for the Yuba-Bear Hydroelectric Project ("Yuba-Bear Project"), a hydroelectric project located on the Middle Yuba, South Yuba, and Bear Rivers in California.  The Federal Power Act ("FPA") grants FERC comprehensive planning authority over hydroelectric generating facilities, such as the Yuba-Bear Project, and broadly preempts conflicting state regulation of such facilities with limited exception.

2.    Pursuant to the FPA, the Yuba-Bear Project is required to renew, and is in the process of renewing, its FERC operating license.  As part of the relicensing process, NID is required by section 401 of the Clean Water Act ("CWA") to seek a water quality certification ("401 certification") from the California State Water Resources Control Board ("SWRCB") that the Yuba-Bear Project's discharges into navigable waters will comply with applicable provisions of the CWA, unless the SWRCB's authority to issue such a certification has been waived.

3.    This action arises from the ongoing attempt of Defendant Sobeck—the Executive Director of the SWRCB—and Defendants Esquivel, D'Adamo, Doduc, Maguire, and Firestone (collectively, "Defendant SWRCB Members")—members of the SWRCB—to impose and enforce through a 401 certification purportedly issued on August 14, 2020 ("Purported 401 Certification") conditions that exceed the State's delegated authority under CWA section 401, and that are thus preempted by the FPA.  Defendant Sobeck lacked the authority to issue the Purported 401 Certification pursuant to CWA section 401 because NID had no application for a 401 certification pending before the SWRCB.  Defendant Sobeck violated section 401 of the CWA by failing to provide adequate notice prior to the issuance of the Purported 401

Certification.  Moreover, the conditions imposed in the Purported 401 Certification exceed the scope of section 401 of the CWA in numerous ways, including that: (a) the conditions require NID to address circumstances that are not attributable to the Yuba-River Project and impacts that are not related to a point source discharge; (b) the conditions are not necessary to ensure compliance with existing water quality standards; and (c) the conditions allow the SWRCB and its staff to unilaterally modify the Purported 401 Certification and to enforce the certification conditions even though they would be conditions of the FERC license subject to FERC's exclusive supervision under the FPA.

4.      Defendants' attempts to impose and enforce the Purported 401 Certification conditions are preempted by and inconsistent with the FPA.  CWA section 401 provides a narrow exception to the broad authority reserved exclusively to FERC over hydroelectric projects, and the conditions are not properly imposed through CWA section 401.

5.      NID also brings this action to address Defendant Sobeck's violations of the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution.  In violation of basic due process requirements, Defendant Sobeck issued the Purported 401 Certification without public process, public proceeding, or any opportunity for NID to address any of the information on which the Purported 401 Certification was based.

6.      The Purported 401 Certification also violates substantive due process by requiring NID to make changes to its operation of the Yuba-Bear Project and undertake costly actions that are not rationally related to a legitimate government interest because they (a) would make NID responsible for mitigating environmental impacts caused by others, such as mercury contamination caused by historic gold mining operations on the Yuba River; (b) are unrelated to NID's own activities; and (c) do not address point source discharges.

7.     NID asks this Court to enjoin the enforcement of the Purported 401 Certification, to order Defendant Sobeck to withdraw the Purported 401 Certification, and to declare that Defendant Sobeck issued the Purported 401 Certification without authority to do so and that the Purported 401 Certification's conditions exceed the SWRCB's authority under the CWA and violate the U.S. Constitution.

8.     Pursuant to this Court's supplemental jurisdiction under 28 U.S.C. § 1367(a), NID also asks this Court to declare that Defendants violated numerous California laws in issuing the Purported 401 Certification and that the Purported 401 Certification is not necessary to assure NID's compliance with "appropriate requirement[s] of State law."  33 U.S.C. § 1341(d).  Those violations of California law include, among others: (a) the issuance of the Purported 401 Certification by Defendant Sobeck without a quorum of the SWRCB Members ever voting to approve that action; (b) the issuance of the Purported 401 Certification without NID having an application for such a certification pending; (c) Defendants' failure to provide NID a fair hearing in violation of California Code of Civil Procedure section 1094.5; (d) Defendant Sobeck's failure to consider the Purported 401 Certification's effects on, among other factors, the disadvantaged communities that NID serves, in violation of California Code of Civil Procedure section 1094.5, Article X, section 2 of the California Constitution, and the Porter-Cologne Water Quality Control Act ("Porter-Cologne"); and (e) the failure of Defendant Sobeck to consider available evidence of the effects that the Purported 401 Certification would have on numerous relevant factors, all in violation of California Code of Civil Procedure section 1094.5's requirement that findings be supported by evidence.

## II.    JURISDICTION

9.    This is an action for declaratory and injunctive relief for violations of the CWA, 33 U.S.C. § 1341, the U.S. Constitution, and California state law.

10.    This Court has jurisdiction over NID's federal claims pursuant to 28 U.S.C. § 1331.

11.    This Court has jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

12.    This action and the remedies sought are further authorized by 28 U.S.C. §§ 1651, 2201, and 2202, and by Federal Rule of Civil Procedure 57.

## III.    VENUE

13.    Venue is proper under 28 U.S.C. § 1391(b)(2) because Defendants filed the Purported 401 Certification with FERC, which is located in the District of Columbia; FERC issued an order determining that the SWRCB waived its right to issue a 401 certification because it did not timely act on NID's application for a 401 certification and instead insisted that it be withdrawn;[1] and the Purported 401 Certification contains requirements that, in the event FERC's waiver determination is overturned, will become conditions on a federal license that FERC will issue in the District of Columbia.[2]

## IV.    PARTIES

### A.    **Plaintiff**

14.    Plaintiff NID is a California Irrigation District formed in 1921 and existing under Division 11 of the California Water Code for the purpose of providing year-round, reliable water

---

[1] FERC's waiver decision is currently under review by the U.S. Court of Appeals for the Ninth Circuit ("Ninth Circuit"). *Cal. State Water Res. Control Bd. v. FERC*, No. 20-72432 (9th Cir. filed Aug. 14, 2020) and *S. Yuba River Citizens League v. FERC*, No. 20-72452 (9th Cir. filed Aug. 17, 2020) (consolidated).

[2] Plaintiff is also commencing litigation against Defendants in the Superior Court of California, County of Sacramento, challenging Defendants' failure to comply with federal and state law on both procedural and substantive grounds in issuing the Purported 401 Certification.

supply to areas of the Sierra Nevada foothills.   NID provides service in an expansive geographic area and is one of the largest water districts in the State of California.   NID's service area currently encompasses more than 287,000 acres in Nevada and Placer Counties.   NID provides treated water to approximately 20,000 customer accounts and irrigation supply to roughly 5,500 accounts.   NID owns and operates several hydropower projects in the State of California, including the approximately 79 megawatt ("MW") Yuba-Bear Hydroelectric Project.

15.     The Yuba-Bear Project enables NID to provide its customers a reliable water supply at affordable rates.   Yuba-Bear Project hydroelectric revenues subsidize NID's water operations and water rates for all customers, including those living within California Department of Water Resources designated disadvantaged communities inside NID's boundaries.

16.     To continue its operation of the Yuba-Bear Project, NID is seeking a new 50-year license from FERC to operate the Project to generate hydroelectricity, provide reliable water supplies, and continue to benefit the river's fish and other aquatic resources.   NID has spent years in FERC's relicensing process, participated in hundreds of meetings and conference calls with state and federal agencies and stakeholders, and has spent tens of millions of dollars on different studies, not limited to environmental studies, in order to support its relicensing application.

17.     The Purported 401 Certification for the FERC relicensing of the Yuba-Bear Project imposes conditions and obligations on NID's operation of the Yuba-Bear Project that will significantly impair NID's ability to continue to do this work for the people of the District. The Purported 401 Certification presents a dangerous financial risk to NID and the communities it serves, including disadvantaged communities, by potentially increasing NID's annual expenses and decreasing its hydroelectric and water-sale revenues by millions of dollars.

B.    **Defendants**

18.    Defendant SWRCB is, and at all relevant times has been, a board of the State of California, created by the Legislature through its adoption of section 175 of the California Water Code.  The SWRCB is responsible for the adjudicatory and regulatory functions of the state in the field of water resources.   Cal. Water Code § 174.   The SWRCB is the state agency responsible for CWA section 401 certifications in California.   *Id.* § 13160.   The SWRCB purports to have delegated authority to act on applications for 401 certification to the Executive Director.  Cal. Code Regs. tit. 23, § 3838(a).

19.    Defendant Eileen Sobeck is the Executive Director of the SWRCB. Defendant Sobeck formulated, issued, and signed the Purported 401 Certification.  Defendant Sobeck is being sued as an individual in her official capacity.

20.    Defendant E. Joaquin Esquivel is the Chair of the SWRCB.  Defendant Esquivel was the Chair and one of the five appointed members of the SWRCB at all relevant times alleged herein.  Defendant Esquivel purports to have delegated all authority to issue 401 certifications to Defendant Sobeck.  Defendant Esquivel is being sued as an individual in his official capacity.

21.    Defendant Dorene D'Adamo is the Vice Chair of the SWRCB. Defendant D'Adamo was the Vice Chair and one of the five appointed members of the SWRCB at all relevant times alleged herein.  Defendant D'Adamo purports to have delegated all authority to issue 401 certifications to Defendant Sobeck.  Defendant D'Adamo is being sued as an individual in her official capacity.

22.    Defendant Tam M. Doduc is a member of the SWRCB.  Defendant Doduc was one of the five appointed members of the SWRCB at all relevant times alleged herein.

Defendant Doduc purports to have delegated all authority to issue 401 certifications to Defendant Sobeck. Defendant Doduc is being sued as an individual in her official capacity.

23.     Defendant Sean Maguire is a member of the SWRCB. Defendant Maguire was one of the five appointed members of the SWRCB at all relevant times alleged herein. Defendant Maguire purports to have delegated all authority to issue 401 certifications to Defendant Sobeck. Defendant Maguire is being sued as an individual in his official capacity.

24.     Defendant Laurel Firestone is a member of the SWRCB. Defendant Firestone was one of the five appointed members of the SWRCB at all relevant times alleged herein. Defendant Firestone purports to have delegated all authority to issue 401 certifications to Defendant Sobeck. Defendant Firestone is being sued as an individual in her official capacity.

## V.     FACTUAL BACKGROUND

### A.     **The Project**

25.     Plaintiff NID owns and operates the Yuba-Bear Project, an approximately 79-MW hydroelectric project completed in 1966 located in northern California in the western Sierra Nevada mountains and their foothills.

26.     The original FERC license for the Yuba-Bear Project was issued by the Federal Power Commission (FERC's predecessor agency) on June 24, 1963 and expired on April 30, 2013. *Nev. Irrigation Dist.*, 29 FPC 1256 (1963). NID currently operates the Yuba-Bear Project under annual licenses automatically issued by FERC from year to year, under section 15(a)(1) of the FPA. 16 U.S.C. § 808(a)(1).

27.     The Yuba-Bear Project facilities are located on the Middle Yuba River, South Yuba River, and the Bear River in Sierra, Nevada, and Placer Counties, California.

28.     There are four developments at the Yuba-Bear Project: Bowman (3.6 MW), Dutch Flat No. 2 (24.6 MW), Chicago Park (39 MW), and Rollins (12.2 MW). Among these

four developments, there are 13 main dams; 11 reservoirs or impoundments; 4 major water conduits; 4 powerhouses with associated switchyards; one 9-mile-long, 60-kilovolt transmission line; and appurtenant facilities and structures, including recreation facilities.

29.     The FERC project boundary currently encompasses 6,252.6 acres, of which NID owns 4,056.3 acres.

30.     The Yuba-Bear Project enables NID to provide its customers a reliable water supply at affordable rates.  Yuba-Bear Project hydroelectric revenues subsidize NID's water operations and water rates for all customers, including those living within California Department of Water Resources designated disadvantaged communities inside NID's boundaries.

31.     The San Francisco Bay/Sacramento-San Joaquin Delta Estuary ("Bay-Delta"), located downstream of the Yuba-Bear Project, is regulated by the SWRCB through the Water Quality Control Plan for the San Francisco Bay/Sacramento-San Joaquin Delta Estuary ("Bay-Delta Plan"), which establishes water quality objectives to protect beneficial uses of water in the Bay-Delta.  Water quality conditions in the Bay-Delta are attributable to numerous other diverters in the watershed.

**B.     The FERC Relicensing of the Project**

32.     On April 15, 2011, NID filed an application for a new FERC license to operate the Yuba-Bear Project.  The application proposes to construct a new powerhouse at the Rollins development that would increase the project capacity from 79 MW to 90.7 MW.

33.     On June 18, 2012, NID filed an amended license application to revise the protection, mitigation, and enhancement measures included in its proposal.

34.     FERC issued a Draft Environmental Impact Statement ("EIS") pursuant to the National Environmental Policy Act on May 17, 2013.

35.     FERC issued the Final EIS on December 19, 2014.  The Final EIS concluded that "[w]hile elevated methylmercury levels in fish tissue associated with historical mining activities have been reported throughout the Sierra Nevada region," there will be no Project-related impacts on mercury conditions in the river and "we do not expect any changes in methylmercury concentrations in the environment or in the tissue of target sportfish as a result of project operations" under the new license. Final Environmental Impact Statement for the Yuba-Bear Project at 275, FERC Project No. 2266-102 (Dec. 19, 2014).

## C.     NID's Application to the SWRCB for 401 Certification

36.     NID's filing of the FERC license application triggered a requirement to apply for a CWA section 401 certification, which would be required for a new FERC license unless the SWRCB waived its authority to issue such a certification.

37.     On March 15, 2012, NID filed an application for a 401 certification with the SWRCB pursuant to CWA section 401, and the SWRCB received the application on the same day.

38.     Pursuant to CWA section 401, the SWRCB had one year to act on the 401 certification request.

39.     On March 1, 2013, NID withdrew and resubmitted its application for 401 certification.  The SWRCB took no action on NID's application for 401 certification.

40.     In its May 17, 2013 Draft EIS, FERC noted that the SWRCB's decision on the application for 401 certification was due by March 1, 2014.

41.     On August 22, 2013, the SWRCB filed comments on the Draft EIS, noting that FERC staff mischaracterized the section 401 process.  The SWRCB asserted that it must comply with the California Environmental Quality Act ("CEQA") in order to issue a 401 certification. The SWRCB further noted that because the CEQA process would not be finished by spring

2014, "[t]he most likely action will be that [NID] will withdraw and resubmit" its application for 401 certification "before the one year deadline if the [SWRCB] is not ready to issue its water quality certification[]."   Comment of State Water Resources Control Board on the Draft EIS at 1, Project Nos. 2266-102 et al. (Aug. 22, 2013).

42.     NID withdrew and resubmitted its application for 401 certification at the direction of the SWRCB again in 2014, 2015, 2016, 2017, and 2018.

43.     On January 25, 2019, the U.S. Court of Appeals for the D.C. Circuit issued a decision in *Hoopa Valley Tribe v. FERC*, 913 F.3d 1099 (D.C. Cir. 2019), holding that a state and an applicant's agreement to withdraw and refile the same 401 certification request does not trigger a new statutory review period and the state waives the 401 certification requirement if it does not act within one year.

44.     Also on January 25, 2019, Defendant Sobeck, the SWRCB's Executive Director, denied NID's application without prejudice.   A copy of the denial letter is attached hereto as Exhibit 1.

45.     NID did not file a new request for 401 certification.

46.     On February 19, 2019, NID filed a request for a FERC determination that the SWRCB waived its certification authority for the relicensing of the Yuba-Bear Project.

47.     On April 16, 2020, FERC issued an Order finding that the SWRCB had waived its 401 certification authority under section 401 of the CWA.   *Nev. Irrigation Dist.*, 171 FERC ¶ 61,029 (2020).

48.     On May 15, 2020, the SWRCB filed a request for rehearing of FERC's waiver determination.

49.     On July 21, 2020, FERC issued an Order Addressing Arguments Raised on Rehearing, affirming its waiver determination and rejecting the SWRCB's arguments.  *Nev. Irrigation Dist.*, 172 FERC ¶ 61,082 (2020).

50.     On August 14, 2020, the SWRCB filed a Petition for Review of FERC's waiver determination before the Ninth Circuit.  *Cal. State Water Res. Control Bd. v. FERC*, No. 20-72432 (9th Cir. filed Aug. 14, 2020).  On August 17, 2020, South Yuba River Citizens League, California Sportfishing Protection Alliance, Friends of the River, and Sierra Club and its Mother Lode Chapter filed a separate Petition for Review of FERC's waiver determination before the Ninth Circuit.  *S. Yuba River Citizens League v. FERC*, No. 20-72452 (9th Cir. filed Aug. 17, 2020).  The petitions have been consolidated by the Ninth Circuit.  NID has intervened in defense of FERC's waiver determination.

**D.     Defendant Sobeck's Issuance of the Purported 401 Certification**

51.     SWRCB staff and Defendant Sobeck did not contact NID while they were developing the Purported 401 Certification and gave NID no opportunity to rebut, address, or even know of information that they were considering during that development period.

52.     The SWRCB's regulations purport to delegate authority to the Executive Director, Defendant Sobeck, to "take all actions" concerning all 401 certifications, "including issuance and denial of certification."  Cal. Code Regs. tit. 23, § 3838(a).  By their actions and inactions, Defendant SWRCB Members purport to delegate that authority to Defendant Sobeck on an ongoing basis.

53.     On August 14, 2020, Defendant Sobeck issued the Purported 401 Certification for the Yuba-Bear Project relicensing on behalf of the SWRCB.  The SWRCB failed to conduct a hearing—or any public process at all—before Defendant Sobeck issued the Purported 401 Certification.

12

54.     NID received no reasonable, or even written, notice that Defendant Sobeck was considering issuing the Purported 401 Certification on behalf of the SWRCB.  Defendant Sobeck provided NID with no opportunity to review or comment on a draft of the Purported 401 Certification before Defendant Sobeck issued it.

55.     The SWRCB was, and all individual Defendants in their official capacities were, required to conduct environmental review under CEQA prior to and in connection with the issuance of the Purported 401 Certification.  Cal. Pub. Res. Code §§ 21002, 21002.1, 21080(a), 21081.  All of the Defendants failed to comply with this obligation.

56.     Condition 21 of the Purported 401 Certification provides that the requirements of the certification:

> shall not become effective as conditions required to be included in the FERC license unless and until FERC sets aside the determination of waiver made in its April 16, 2020 waiver order and its July 21, 2020 order addressing arguments on rehearing or is required to do so by court order, or there is another judicial or administrative action finding that FERC improperly found waiver of the [SWRCB's] certification authority.

Condition 21 also states that "[t]he requirements of this order are not binding on or enforceable against the Licensee except to the extent they are incorporated into a FERC license or FERC license amendment, or are incorporated into another regulatory decision or order by the [SWRCB] or a Regional Water Board."  However, on August 14, 2020, the SWRCB transmitted the Purported 401 Certification to FERC.  The Purported 401 Certification is attached hereto as Exhibit 2.

57.     The certification also provides that Condition 21 does not affect the timing within which NID must seek reconsideration of the certification:

> This condition does not affect the time for filing a petition for reconsideration under section 3867 of title 23 of the California Code of Regulations, provided that the failure to seek reconsideration of this certification is not a limitation on the

ability to see reconsideration of a later issued decision or order for which reconsideration is authorized under [SWRCB] regulations or the Water Code.

58.     The Purported 401 Certification includes 49 conditions.   Pursuant to such conditions, and without holding any evidentiary hearing, SWRCB staff could order NID to, among other things: (1) comply with streamflow standards in what is currently a proposed amendment to the Bay-Delta Plan that, if applied to NID as proposed in the Purported 401 Certification, would require NID to pass 55 percent of unimpaired flows through the Yuba-Bear Project, which would significantly affect NID's ability to store and use such flows for water supply and power generation (Condition 25); (2) modify instream flows, change ramping rates, and make other project modifications on an ongoing basis without providing NID adequate due process as required by law (Conditions 1, 4, 5, 6, 8, 9, 10, 11, 12, 13, 15, 16, 17, 18, 25, 26, 28, 29, 30, 35); and (3) mitigate for mercury contamination caused by historic gold mining operations that long predated the Yuba-Bear Project by requiring NID to develop a Mercury Management Plan that must include measures to reduce the amount of methylmercury or rate of mercury methylation in the watershed (Condition 20).   In addition, the Purported 401 Certification includes conditions that attempt to regulate upstream operations of the Yuba-Bear Project such as storage, recreational activities, and sediment management that are unrelated to Yuba-Bear Project discharges or whether those discharges comply with existing state water quality requirements.

59.     The Purported 401 Certification's conditions could potentially have disastrous consequences for NID and the households of its more than 25,000 treated and raw water account holders.   Among other impacts, the Purported 401 Certification has the potential to undermine NID's economic viability based on reduced hydroelectric generation and revenues and imperil the reliability of NID's water supply.   For example, if the SWRCB were to exercise its reserved

14

authority to modify Project operations to impose Bay-Delta Water Quality standards, currently anticipated to require 55% unimpaired flows on the tributaries upon which the Yuba-Bear Project relies, NID would be unable to meet its projected water delivery demands and would experience a material loss of hydroelectric production.  The combined loss of power generation and water sales would be in the realm of one million four hundred fifty thousand ($1,450,000) dollars each year over the next 50 years.

60.     Under the "reopener" provisions of the Purported 401 Certification, the SWRCB and its Staff can significantly alter Project operations at any time during the term of NID's new FERC Project license.  This could potentially impose millions of dollars in additional costs on NID and the many disadvantaged communities it serves.

**E.     NID's Challenges to the Purported 401 Certification and Public Records Act Request**

61.     On September 10, 2020, NID filed a Petition for Reconsideration of the Purported 401 Certification with the SWRCB. The Petition for Reconsideration is attached hereto as Exhibit 3.  Therefore, within 30 days of having received the Purported 401 Certification, NID filed the Petition for Reconsideration in compliance with California Code of Regulations, title 23, section 3867.  In the Petition for Reconsideration, NID requested a formal hearing before the five-member SWRCB in accordance with constitutional standards of due process.  Attachment 2 to the Petition for Reconsideration was NID's Request to the Executive Director to Prepare the Administrative Record for Water Quality Certification.

62.     On September 11, 2020, NID filed a copy of the Petition for Reconsideration of the Purported 401 Certification with FERC.

63.     The correspondence set forth as Attachment 2 to the Petition for Reconsideration also sought production of records pursuant to the California Public Records Act, Government

15

Code § 6250 et seq. ("CPRA"). The categories of materials requested pursuant to the CPRA included: (a) Public records dating from 2012 regarding SWRCB's involvement in FERC relicensing proceedings concerning the Yuba-Bear Project; (b) Records dating from 2012 to the present of agency communications and documents regarding the Yuba-Bear Project water quality certification, including intra-agency emails, correspondence and documents regarding the same, and inter-agency emails or correspondence regarding the same; and (c) Reports, findings, or other materials prepared or reviewed by the SWRCB regarding the FERC relicensing or water quality certification for the Yuba Bear Project.

64. On November 5, 2020, NID, through its counsel of record, submitted a letter via email and U.S. Mail to Phil Wyels, Assistant Chief Counsel for SWRCB and coordinator of SWRCB's Public Records Center, advising that, as of the date of the November 5, 2020 correspondence, NID had not yet received any SWRCB response to its Public Records Act request.

65. As of the date of this filing, the SWRCB has not provided NID the administrative record for its issuance of the Purported 401 Certification. Further, as of the date of this filing, SWRCB has not responded to NID's Public Records Act request or provided any documents responsive thereto.

66. California Water Code § 13330(a) can be interpreted to require the SWRCB and the Defendant SWRCB Members to act on NID's Petition for Reconsideration within 90 days from the date Executive Director Sobeck issued the Purported 401 Certification, or November 12, 2020.

67. By November 12, 2020, the SWRCB and the Defendant SWRCB Members failed to act on NID's Petition for Reconsideration of the Purported 401 Certification.

68.     Pursuant to the principles set forth *County of Alpine v. County of Tuolomne*, 49 Cal. 2d 787, 798 (Cal. 1958), and *City of Lodi v. Randtron*, 118 Cal. App. 4th 337, 360 (Cal. Ct. App. 2004), reconsideration is not a prerequisite to judicial review of the Purported 401 Certification because the SWRCB lacked jurisdiction to issue a 401 certification for the Yuba-Bear Project in the first instance. Nonetheless, through its Petition for Reconsideration, NID exhausted the only administrative remedy that was available to it.

69.     On December 3, 2020, NID provided notice of this complaint, including the CEQA claim, to the SWRCB, in compliance with California Public Resources Code section 21167.5. A true and correct copy of the notice with proof of service is attached hereto as Exhibit 4.

70.     In pursuing this action, which involves the enforcement of important rights affecting the public interest, NID will confer a substantial benefit on the public, including the citizens who live within the District, and therefore will be entitled to an award of reasonable attorney fees pursuant to California Code of Civil Procedure section 1021.5 and Government Code section 800.

## VI.     LEGAL BACKGROUND

### A.     Federal Power Act

71.     The FPA represents a congressional intention to establish "a broad federal role in the development and licensing of hydroelectric power." *California v. FERC*, 495 U.S. 490, 496 (1990).

72.     The FPA establishes "a complete scheme of national regulation" to "promote the comprehensive development of the water resources of the Nation," *First Iowa Hydro-Elec. Coop. v. FPC*, 328 U.S. 152, 180 (1946), and grants FERC "comprehensive planning authority"

over the Nation's hydropower, including the licensing of hydroelectric generating facilities, *California v. FERC*, 495 U.S. at 506.

73.     The FPA gives FERC the authority to issue licenses to generate electric power at a dam or other project works on navigable waters, federal lands or reserves, and non-navigable streams which affect interstate or foreign commerce. 16 U.S.C. § 797(e).

74.     Licenses may be issued for a maximum of 50 years. *Id.* § 799. Section 6 of the FPA provides that a license, once issued, "may be revoked only for the reasons and in the manner prescribed under the provisions of this chapter, and may be altered or surrendered only upon mutual agreement between the licensee and the Commission." *Id.*

75.      Once an initial license is set to expire, the project operator must apply for a new license through the relicensing process. *Id*. § 808(a). During relicensing, FERC evaluates the project and determines whether continued project operation is in the public interest and, if so, under what conditions. *Id.*

76.     Section 10(a) of the FPA authorizes FERC to issue licenses subject to the conditions that FERC deems best suited for power development and other public uses of the waters. *Id.* § 803(a).

77.     States lack any "veto power" or inherent sovereign power over federally licensed hydroelectric projects.

**B.     Clean Water Act**

78.     Hydroelectric facilities licensed under the FPA are subject to CWA section 401 water quality certification requirements.

79.     Section 401 of the CWA requires all applicants for a federal license or permit to obtain a 401 certification from the applicable state agency prior to issuance of any federal license

or permit that may result in a discharge to navigable waters.  The 401 certification required pursuant to section 401 of the CWA is ancillary to other federal statute licensing requirements.

80.     A state certifying agency's authority to issue or deny a 401 certification for a federal license or permit commences upon receipt of that federal license or permit applicant's request for certification.  40 C.F.R. § 121.7.  "Th[e] language [of CWA section 401(a)(1)] clearly expresses a congressional intent to place the burden of requesting a state water quality certification on the license applicant."  *State of North Carolina v. FERC*, 112 F.3d 1175, 1184 (D.C. Cir. 1997).

81.     If the state fails or refuses to act on a request for 401 certification within one year after receipt of such request, the 401 certification requirement is waived with respect to such federal license or permit.  33 U.S.C. § 1341(a)(1).

82.     CWA section 401(a)(1) requires states to "establish procedures for public notice in the case of all applications for certification."  *Id.*  "[B]y implication, section 401(a)(1) also requires states to *comply* with their public notice procedures."  *City of Tacoma, Wash. v. FERC*, 460 F.3d 53, 68 (D.C. Cir. 2006) (emphasis in original).

83.     A 401 certification is only required for an applicant for a federal license or permit to conduct an activity that may result in a discharge to navigable waters.  33 U.S.C. § 1341(a).

84.     Section 401 of the CWA provides that a state may grant a water quality certification with limitations or requirements, which will become conditions on the federal license.  *Id.* § 1341(d).  Section 401 limits states' power to impose conditions by providing that states may only impose those conditions "necessary" to assure that the applicant "will comply with any [1] applicable effluent limitations and other limitations, under [CWA section 301 or 302], [2] standard of performance under [CWA section 306], or [3] prohibition, effluent

19

standard, or pretreatment standard under [CWA section 307], and with any [4] other appropriate requirement of State law . . . ."  *Id.*

85.     If a state issues a valid 401 certification for a hydroelectric facility subject to certain conditions, FERC must include those conditions in its license.

86.     The U.S. Environmental Protection Agency ("EPA") is the federal agency charged with administering the CWA.

87.     On July 13, 2020, the EPA published a final rule, interpreting section 401 of the CWA ("Final Rule").  Clean Water Act Section 401 Certification Rule, 85 Fed. Reg. 42,210 (July 13, 2020).

88.     Under the Final Rule, the scope of a 401 certification "is limited to assuring that a *discharge* from a Federally licensed or permitted activity will comply with *water quality requirements*." 40 C.F.R. § 121.3 (emphasis added).

89.     "Discharge" is defined as "a discharge from a point source into a water of the United States."  *Id.* § 121.1(f).  Conditions imposed under CWA section 401 that regulate "the activity as a whole," rather than the discharge itself, are beyond the scope of section 401.  85 Fed. Reg. at 42,251.

90.     "Water quality requirements" are defined as "applicable provisions of §§ 301, 302, 303, 306, and 307 of the Clean Water Act, and state or tribal regulatory requirements for point source discharges into waters of the United States." 40 C.F.R. § 121.1(n).

**C.     California Environmental Quality Act**

91.     CEQA imposes certain obligations on public agencies to review, analyze, and identify the significant effects of a proposed project and any feasible alternatives or mitigation measures that will avoid or substantially lessen such significant effects.  *See, e.g.*, Cal. Pub. Res. Code §§ 21002, 21002.1, 21080(a), 21081.

92.    The SWRCB is a public agency within the meaning of CEQA.  The individual Defendants are responsible for ensuring that the SWRCB acts in compliance with CEQA.

93.     The SWRCB's issuance of a water quality certification meets the requirements of a project that is subject to CEQA review.

**D.    California Water Code**

94.    The SWRCB is created by, and generally governed by, portions of the California Water Code.

95.    Water Code section 175 specifies that the SWRCB consists of five members with specific qualifications and experience, each of whom is appointed by the Governor. The five appointed members of the SWRCB, which currently are the Defendant SWRCB Members, are clothed with a public trust to exercise their judgment and discretion.

96.    Under Water Code sections 181 and 183 and other statutes, a quorum of the SWRCB members must vote to approve an action for it to be an action of the SWRCB, unless a statute authorizes the SWRCB to delegate its authority to an individual member or its staff.

97.    Water Code section 181 states that "[t]hree members of the board shall constitute a quorum for the purpose of transacting any business of the board."

98.    Water Code section 13160 authorizes the SWRCB to issue 401 certifications under the CWA.

99.    No statute expressly authorizes the SWRCB to delegate the issuance of 401 certifications for FERC's relicensing of hydroelectric projects under the FPA.

100.    Water Code section 13330 provides that any party aggrieved by a decision or order of the SWRCB under that division of the Water Code may obtain judicial review of the same by filing a petition for writ of mandate under California Code of Civil Procedure section

1094.5.  Water Code section 13160, under which the SWRCB issues 401 certifications, is part of the division of the Water Code to which Water Code section 13330 applies.

**E.      Bagley-Keene Open Meeting Act**

101.      The Bagley-Keene Open Meeting Act, Cal. Gov't Code § 11120 et seq. ("Bagley-Keene"), states California's open-meeting requirements for state bodies.

102.      The SWRCB is a "state body" to which Bagley-Keene applies.  Cal. Gov't Code § 11121(a).

**F.      California Public Records Act**

103.      Under the CPRA, all records that are prepared, owned, used, or retained by any public agency, and that are not subject to the CPRA's statutory exemption to disclosure must be made publicly available for inspection and copying upon request. Cal. Gov't Code § 6253.

104.      The CPRA requires the government to determine whether to disclose records within 10 days of receiving a request, unless "unusual circumstances" justify a 14-day extension of that period.  *Id.* § 6253(c).  The government must then promptly provide a copy of the records to the requesting person or allow inspection of the records.  *Id.* § 6253(b).  The statute does not allow the government to delay or obstruct the copying of public records.  *Id.* § 6253(d).

105.      The CPRA provides that, when it appears in a verified petition to the Superior Court of the county where the records are held that certain public records are being improperly withheld from a member of the public, the court shall order the officer or person charged with withholding the records to disclose the public record or show cause why the officer or person should not do so.  *Id.* § 6259(a).  If the court finds that the public official's decision to refuse disclosure is not justified, the court shall order the public official to make the record public.  *Id.* § 6259(b).  The court shall award court costs and reasonable attorney's fees to the requester should the requester prevail in litigation filed pursuant to this section.  *Id.* § 6259(d).

## G.    California Code of Civil Procedure

106.    Water Code section 13330 states that Code of Civil Procedure section 1094.5(e) generally will govern the courts' consideration of petitions for writ of mandate brought under Water Code section 13330.

107.    Under Code of Civil Procedure section 1094.5(b), an administrative order or decision is invalid if the agency proceeded without or in excess of its jurisdiction; the agency failed to provide a fair trial or hearing; the agency committed a prejudicial abuse of discretion by proceeding in violation of law; the agency committed a prejudicial abuse of discretion by adopting an order not supported by adequate findings; or the agency committed a prejudicial abuse of discretion because its findings were not supported by substantial evidence.

## VII.    CLAIMS FOR RELIEF

## A.    Count I: Violation of Section 401 of the CWA, 33 U.S.C. § 1341

108.    Plaintiff repeats and incorporates by reference every allegation in the preceding paragraphs.

109.    A state's authority to issue a 401 certification and to impose conditions through such a certification is derived from the CWA.

110.    The Purported 401 Certification violates section 401 of the CWA and exceeds the scope of authority under section 401 of the CWA in at least nine ways.

111.    First, Defendant Sobeck's issuance of the Purported 401 Certification on behalf of the SWRCB exceeded the state's authority under CWA section 401 because NID did not have an application for a 401 certification pending at the time Defendant Sobeck issued the Purported 401 Certification.  Defendant Sobeck denied NID's last 401 certification application without prejudice in 2019 and NID has not submitted a new certification request.

112.    Second, Defendant Sobeck issued the Purported 401 Certification without formal or even written notice to NID, in violation of section 401's notice requirement.

113.    Third, the 401 Certification exceeds the scope of CWA section 401 by imposing conditions to address environmental conditions that are caused by actions or activities of third parties and that are not attributable to the Yuba-Bear Project.  These conditions include, but are not limited to:

        a.    Conditions 1, 25, and 28, under which the SWRCB could compel NID to comply with provisions in the Bay-Delta Plan or future updates thereto that mitigate for conditions caused by other water diverters; and

        b.    Condition 20, which would require NID to prepare a Mercury Management Plan with measures to reduce the amount of methylmercury or rate of mercury methylation in the watershed to remedy habitat conditions that were caused by hydraulic mining between 1850 and 1900, much of it utilizing mercury as an agent in processing mining tailings.

114.    Fourth, CWA section 401 only authorizes conditions to address a project's point source discharges, not the entire "activity" involved in the relevant application for a federal permit or license.   40 C.F.R. § 121.1(f), (n); 85 Fed. Reg. at 42,234.   The Purported 401 Certification improperly includes conditions that do not address the Yuba-Bear Project's point source discharges, including but not limited to: Conditions 5 (monitoring and adaptive management), 6 (spill cessation and reduction), 7 (canal outages), 8 (erosion and sediment control), 9 (large woody material management), 10 (entrainment prevention), 11 (aquatic invasive species management), 12 (fish stocking), 13 (recreation facilities), 15 (drought planning), 16 (hazardous materials), 17 (coordinated operations), 20 (mercury management), 22

(no net loss of wetland or riparian habitat functions), 25 (general reservation of authority), 26 (general reservation of authority due to climate change), 27 (notice and opportunity to be heard), 30 (consistency with Porter-Cologne and CWA section 303 standards), 34 (modifications in response to violations), 35 (Executive Director), 37 (compliance with all applicable federal, state, or local laws), 41 (storage of hazardous chemicals away from watercourses), 43 (compliance with National Pollutant Discharge Elimination System General Permit for Storm Water Discharges), and 44 (compliance with statewide National Pollutant Discharge Elimination System Permit for Residual Aquatic Pesticide Discharges).

115.   Fifth, the Purported 401 Certification's conditions exceed the scope of authority under CWA section 401 because some conditions are unrelated to water quality and are not necessary to ensure compliance with water quality standards, including but not limited to Conditions 9, 10, 11, 12, 13, 15, 16, 17, 20, 22.  *See* 85 Fed. Reg. at 42,253; *PUD No. 1 of Jefferson Cty. v. Wash. Dep't of Ecology*, 511 U.S. 700, 712 (1994) ("The State can only ensure that the project complies with 'any applicable effluent limitations and other limitations, under [33 U.S.C. §§ 1311, 1312]' or certain other provisions of the Act, 'and with any other appropriate requirement of State law.'") (citation omitted); *Am. Rivers, Inc. v. FERC*, 129 F.3d 99, 107 (2d Cir. 1997) (holding that "[s]ection 401(d) . . . restricts conditions that states can impose to those affecting water quality.") (citation omitted).

116.   Sixth, conditions in a 401 certification must be "necessary" to assure compliance with "appropriate requirement[s] of State law."  33 U.S.C. § 1341(d).  Any conditions imposed in the certification must be accompanied by an explanation of "why the condition is necessary to assure that the discharge from the proposed project will comply with water quality requirements," 40 C.F.R. § 121.7(d)(1)(i), and a citation to the relevant "federal, state, or tribal

law that authorizes the condition," *id.* § 121.7(d)(1)(ii).  The SWRCB did not provide such an explanation and or such citations in the Purported 401 Certification.

117.    Seventh, the issuance of, and conditions imposed in, the Purported 401 Certification by Defendant Sobeck violate numerous California laws, as set forth in Counts V through XII below.  Conditions that violate state law cannot be necessary to assure that NID complies with "appropriate requirement[s] of State law," 33 U.S.C. § 1341(d), and thus fall outside the scope of conditions authorized under CWA section 401.

118.    Eighth, once a state acts on a 401 certification request, CWA section 401 does not provide an ongoing role for the state to enforce 401 certification conditions or unilaterally modify the 401 certification. *Id.* § 1341(a)(5); 40 C.F.R. § 121.11(c); 85 Fed. Reg. at 42,275. States have one year to act upon a request for certification and may not extend that period by exercising ongoing enforcement authority. 33 U.S.C. § 1341(a)(1); 85 Fed. Reg. at 42,279. Instead, federal licensing or permitting agencies have sole responsibility for enforcement of certification conditions.

119.    The Purported 401 Certification improperly includes conditions that would allow the SWRCB to unilaterally modify the Purported 401 Certification or exercise ongoing enforcement authority over the certification conditions, which exceed the SWRCB's authority under CWA section 401(a)(1) and (a)(5).  Such conditions include but are not limited to: Conditions 1, 4, 5, 6, 8, 9, 10, 11, 12, 13, 15, 16, 17, 18, 25, 26, 28, 29, 30, and 35.

120.    Ninth, CWA section 401 only authorizes a state to certify whether a project will comply with existing water quality standards.  33 U.S.C. § 1341(a) (referencing 33 U.S.C. § 1313).  Proposed state water quality standards are not water quality standards until they are approved by EPA.  *Id.* § 1313(c)(3).  The Purported 401 Certification's conditions, including but

26

not limited to Conditions 1, 25, and 28, exceed the scope of authority under CWA section 401 because they attempt to require NID to comply with water quality criteria from a proposed update to the Bay-Delta Plan, which the SWRCB has not yet adopted and EPA has not approved. Conditions 1, 25, and 28 also improperly circumvent the limitation in CWA section 401(a)(1) that the state must act upon a request for 401 certification within one year, by allowing the SWRCB to impose new conditions on the Yuba-Bear Project beyond the one-year statutory period.

121.    Accordingly, the Purported 401 Certification's conditions violate CWA section 401.

**B.**    **Count II: Violation of the Supremacy Clause of the U.S. Constitution**

122.    Plaintiff repeats and incorporates by reference every allegation in the preceding paragraphs.

123.     Under the Supremacy Clause of the United States Constitution, a state action is preempted when it stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.  U.S. Const. art. VI, cl. 2.

124.    With limited exception, the FPA occupies the field of hydroelectric regulation entirely.

125.    Section 401 of the CWA provides a narrow exception to FERC's authority to regulate hydroelectric projects under the FPA, preserving a limited amount of state authority.

126.    Defendant Sobeck's issuance of the Purported 401 Certification was an action taken under the color of state action.

127.    The Purported 401 Certification exceeds the scope of authority authorized under CWA section 401 in at least nine different ways, as set forth in paragraphs 111 to 120.

128.     Because the State is not authorized by CWA section 401 to impose the conditions set forth in the Purported 401 Certification, Defendant Sobeck's imposition of such conditions on behalf of the SWRCB invades FERC's jurisdiction as reserved by the FPA and stands as an obstacle to FERC's exercise of its authority under the FPA.

129.     The Purported 401 Certification conditions, which exceed the scope of section 401 of the CWA, are preempted by the Supremacy Clause.

## C.     Count III: Violation of the Fourteenth Amendment to the U.S. Constitution (Procedural Due Process)

130.     Plaintiff repeats and incorporates by reference every allegation in the preceding paragraphs.

131.     The Fourteenth Amendment to the U.S. Constitution prohibits states from depriving "any person of . . . property . . . without due process of law."  U.S. Const. amend. XIV, § 1.

132.     At a minimum, procedural due process requires that a person be given "notice of the case against him and [an] opportunity to meet it." *Mathews v. Eldridge*, 424 U.S. 319, 348-49 (1976) (citation omitted).

133.     NID is an independent special district formed in 1921 under the California Water Code (Division 11 Irrigation Districts) by and for the people who own lands within its 287,000-acre boundaries.  NID was organized primarily to supply water for irrigation, municipal, domestic, and industrial purposes in wide areas of Nevada and Placer Counties.  NID owns and operates an extensive reservoir and canal system and network of water treatment plants as well as its hydroelectric plants.  NID's activities, including its operation of the Yuba-Bear Project, therefore, are inextricably intertwined with the rights and needs of the people who reside within the District's boundaries in addressing the District's water problems.

134.    NID has a protected property interest in the Yuba-Bear Project, as the owner of the Yuba-Bear hydroelectric facilities, and the land on which the Yuba-Bear Project is located.

135.    In purporting to delegate all authority to issue the Purported 401 Certification to Defendant Sobeck, the Defendant SWRCB Members purported to act under color of state law. In issuing the Purported 401 Certification, Defendant Sobeck acted under color of state law.

136.    The Purported 401 Certification purports to regulate the Yuba-Bear Project.  The Purported 401 Certification's conditions alter NID's rights by requiring NID to make changes to its operation of the Yuba-Bear Project and to undertake costly actions.

137.    NID was not given formal or even written notice and the opportunity to be heard on the need for the Purported 401 Certification's conditions, prior to the issuance of the Purported 401 Certification and its transmittal to FERC.  The SWRCB and its Defendant SWRCB Members did not act on NID's Petition for Reconsideration of the Purported 401 Certification.

138.     Defendant Sobeck violated NID's procedural due process rights by issuing the Purported 401 Certification without public process, public proceeding, or any opportunity for NID to address any of the information on which the 401 Certification was based.

**D.**    **Count IV: Violation of the Fourteenth Amendment to the U.S. Constitution (Substantive Due Process)**

139.    Plaintiff repeats and incorporates by reference every allegation in the preceding paragraphs.

140.    The Due Process Clause of the Fourteenth Amendment to the U.S. Constitution provides protection from economically burdensome regulations that are arbitrary and not rationally related to a legitimate government interest. U.S. Const. amend. XIV.

141.    In issuing the Purported 401 Certification, Defendant Sobeck acted under color of state law. The SWRCB and the Defendant SWRCB Members did not act on NID's Petition for Reconsideration to address the problems of the Purported 401 Certification issued by Defendant Sobeck.

142.    NID is an independent special district formed in 1921 under the California Water Code (Division 11 Irrigation Districts) by and for the people who own lands within its 287,000-acre boundaries.  NID was organized primarily to supply water for irrigation, municipal, domestic, and industrial purposes in wide areas of Nevada and Placer Counties.  NID owns and operates an extensive reservoir and canal system and network of water treatment plants as well as its hydroelectric plants.  NID's activities, including its operation of the Yuba-Bear Project, therefore, are inextricably intertwined with the rights and needs of the people who reside within the District's boundaries in addressing the District's water problems.

143.    NID has a protected property interest in the Yuba-Bear Project, as the owner of the Yuba-Bear Project, and the land on which the Yuba-Bear Project is located.

144.    The Purported 401 Certification's conditions require NID to make changes to its operation of the Yuba-Bear Project and to undertake costly actions.  These actions are not rationally related to a legitimate government interest because they (a) would make NID responsible for mitigating environmental conditions caused by historic hydraulic mining and diversion of water by other water diverters in the Yuba River watershed; (b) are unrelated to NID's own activities; and (c) do not address point source discharges.

145.    In issuing the Purported 401 Certification with such conditions, Defendant Sobeck imposed burdensome regulations on NID that are not rationally related to a legitimate government interest, in violation of the Fourteenth Amendment.

E.   **Count V: Lack of Jurisdiction (Violation of Cal. Code Regs. tit. 23, §§ 3835-3838)**

146.   Plaintiff repeats and incorporates by reference every allegation in the preceding paragraphs.

147.   Water Code section 13160 authorizes the SWRCB to issue 401 certifications under the CWA.

148.   The scope of the SWRCB's authority to issue a 401 certification is limited to responding to a filed, and pending, application for certification. Cal. Code Regs. tit. 23, §§ 3835-3838.

149.   California Code of Regulations, title 23, section 3831(b) defines "application" as "a written request for certification, including accompanying materials."

150.   NID had no pending application for a 401 certification at the time Defendant Sobeck issued the Purported 401 Certification on behalf of the SWRCB.

151.   Based upon the foregoing, Defendants acted in excess of the SWRCB's jurisdiction, and committed a prejudicial abuse of discretion, under Code of Civil Procedure section 1094.5 by failing to proceed in a manner required by California Code of Regulations, title 23, sections 3835-3838.

F.   **Count VI: Improper Delegation of Authority (Violation of Cal. Water Code §§ 175, 181, 13160)**

152.   Plaintiff repeats and incorporates by reference every allegation in the preceding paragraphs.

153.   The SWRCB was created by the California Legislature and generally is governed by the California Water Code.  The SWRCB may issue 401 certifications under Water Code section 13160, assuming that the SWRCB complies with applicable federal and state laws and regulations.

154.    Water Code section 175 specifies that the SWRCB consists of five members with specific qualifications and experience, each of whom is appointed by the Governor. The five appointed members of the SWRCB are clothed with a public trust to exercise their judgment and discretion. The exercise of judgment and discretion cannot be delegated in the absence of statutory authorization.

155.    Water Code section 181 states that "[t]hree members of the board shall constitute a quorum for the purpose of transacting any business of the board."

156.    Pursuant to Water Code section 13160, the authority to issue 401 certifications is vested with the SWRCB as a board of the Defendant SWRCB Members, not Defendant Sobeck or any other member of the SWRCB's staff.

157.    No statute granted authority to the appointed members of the SWRCB to delegate powers or public trust duties held by the SWRCB, collectively, to Defendant Sobeck or to any staff member or individual in relation to the issuance of the Purported 401 Certification.

158.    No statute authorized the SWRCB to promulgate regulations that allow actions that are not permitted by statute or that conflict with constitutional principles of due process.  No statute authorized the SWRCB to promulgate regulations that allow the SWRCB, generally, or the Defendant SWRCB Members, specifically, to delegate their public trust responsibilities in relation to the Purported 401 Certification to Defendant Sobeck or any other employee of the SWRCB.

159.    Notwithstanding the above limitations of authority, the SWRCB's regulations, and specifically California Code of Regulations, title 23, section 3838(a), purport to provide complete delegation of the SWRCB's discretion, judgment, and authority to issue 401 certifications for FERC's relicensing of hydroelectric projects like the Yuba-Bear Project to

Defendant Sobeck, as the SWRCB's Executive Director, without a hearing and without a vote of a quorum of the SWRCB.

160.    Defendant Sobeck issued the Purported 401 Certification outside the public's observation; without prior notice to NID; without any public proceeding or participation; and without any opportunity for NID to address any of the information on which the Purported 401 Certification was based.

161.    The Purported 401 Certification was issued by Defendant Sobeck based upon the sections of the regulations purporting to delegate authority to the Executive Director, but the Purported 401 Certification is invalid because those regulations violate law and the Executive Director did not have valid legal authority to take this action.

162.    Although the Purported 401 Certification was never adopted by a quorum of the SWRCB and the Defendant SWRCB Members, the Purported 401 Certification was purportedly issued by Director Sobeck in violation of Water Code section 181, which requires that actions of the SWRCB be taken by vote of the members of the Board.

163.    The Purported 401 Certification includes terms and conditions under which Defendant Sobeck, a member of the SWRCB staff, purports to grant to herself and other members of the SWRCB staff ongoing authority to modify those terms and conditions, including but not limited to terms and conditions relating to the Bay-Delta Plan that have not yet been adopted.

164.    The purported ongoing delegation of authority to SWRCB staff to modify the 401 Certification allows staff to continue to act outside the public's observation; without any public notice or participation; and without any opportunity for NID to address or rebut future modifications—all in violation of law.

165.    Based upon the foregoing, Defendant Sobeck, the SWRCB, and the Defendant SWRCB Members proceeded without, or in excess of statutory or regulatory authority, and committed a prejudicial abuse of discretion by failing to proceed in a manner required by law, under Code of Civil Procedure section 1094.5.

**G.      Count VII: Violation of Bagley-Keene Open Meeting Laws (Cal. Gov't Code § 11120 et seq.)**

166.    Plaintiff repeats and incorporates by reference every allegation in the preceding paragraphs.

167.    Pursuant to Water Code section 13160, the authority to issue 401 certifications is vested with the SWRCB.

168.    California's requirement of governmental transparency is codified in Government Code section 11120 et seq., the Bagley-Keene Open Meeting Act.

169.    The SWRCB is a "state body" to which Bagley-Keene applies.  Cal. Gov't Code § 11121(a).

170.    The SWRCB, and its Defendant SWRCB Members, never considered the Purported 401 Certification at any public meeting.  Defendant Sobeck's formulation and issuance of the Purported 401 Certification, behind closed doors and without any public notice or proceedings, as a purported action of the SWRCB, violated the open-meeting requirements that Bagley-Keene sets for actions of the SWRCB.

171.    Based upon the foregoing, Defendant Sobeck, the SWRCB, and the Defendant SWRCB Members proceeded without, or in excess of jurisdiction and committed a prejudicial abuse of discretion by failing to proceed in the manner required by law, under Code of Civil Procedure section 1094.5.

H.  **Count VIII: Failure to Conduct a Fair Hearing (Cal. Civ. Proc. Code § 1094.5)**

172.    Plaintiff repeats and incorporates by reference every allegation in the preceding paragraphs.

173.    Water Code section 13330(e) states that Code of Civil Procedure section 1094.5 governs judicial review of 401 certifications.  Under Code of Civil Procedure section 1094.5, subdivision (b), agency action made as the result of a proceeding in which by law a hearing is required to be given is invalid if the agency failed to provide a "fair trial."

174.    The SWRCB staff, without providing notice to NID, drafted the terms and conditions of the Purported 401 Certification. SWRCB staff denied NID any opportunity to comment on or present evidence to rebut the information relied upon by the SWRCB staff in drafting the Purported 401 Certification.  Without any public notice or proceedings, Defendant Sobeck issued the Purported 401 Certification on behalf of the SWRCB.

175.    Other than filing its Petition for Reconsideration, on which the SWRCB has taken no action, NID was unable, in the exercise of reasonable diligence, to produce evidence to the SWRCB that demonstrates that the terms and conditions of the Purported 401 Certification are improper because Defendant Sobeck and the SWRCB failed to provide NID with an opportunity to participate in a fair hearing and failed to allow NID to present evidence prior to the issuance of the Purported 401 Certification.

176.    Based on the foregoing, and under Code of Civil Procedure section 1094.5, Defendant Sobeck and the SWRCB proceeded without, or in excess of jurisdiction; failed to provide NID with a fair hearing; and committed a prejudicial abuse of discretion by failing to proceed in the manner required by law in issuing the Purported 401 Certification.

I.     **Count IX: Failure to Consider Relevant Evidence (Cal. Civ. Proc. Code § 1094.5)**

177.    Plaintiff repeats and incorporates by reference every allegation in the preceding paragraphs.

178.    An agency decision is an abuse of discretion if the agency order or decision is not supported by the findings or the findings are not supported by the evidence. Cal. Civ. Proc. Code § 1094.5(b).

179.    In issuing the Purported 401 Certification, Defendant Sobeck, as the purported delegate of the SWRCB and its Defendant SWRCB Members, ignored evidence, ignored scientific findings, and failed to consider the potential impacts of the imposition of the conditions of the Purported 401 Certification including, but not limited to, the following:

a.     The Purported 401 Certification failed to analyze the well-documented impacts of historic hydraulic mining on the river's habitat and water quality.

b.     The Purported 401 Certification failed to analyze the millions of dollars in lost revenue and increased costs that will result over the term of the license. The Purported 401 Certification further failed to consider the significant indirect impacts of this loss and increased costs on the disadvantaged communities and the local economy.

c.     The Purported 401 Certification failed to consider its impact on NID's ability to transfer water to communities that need additional sources of water, which advances California's policy of providing water supplies to regions in need.

180.    NID presented information to demonstrate the impacts and failures of the Purported 401 Certification described in the preceding paragraph with NID's Petition for Reconsideration, but the SWRCB and the Defendant SWRCB Members took no action on the Petition for Reconsideration within the time allowed by statute.

181.   Based upon the foregoing, and under Code of Civil Procedure section 1094.5, Defendant Sobeck, the SWRCB, and the Defendant SWRCB Members committed a prejudicial abuse of discretion by failing to proceed in the manner required by law by issuing the Purported 401 Certification, which is not supported by findings, and by issuing findings that are not supported by the evidence.

**J.      Count X: Failure to Comply with CEQA (Cal. Pub. Res. Code §§ 21005, 21168)**

182.   Plaintiff repeats and incorporates by reference every allegation in the preceding paragraphs.

183.   California imposes obligations on public agencies, pursuant to CEQA to review, analyze, and identify the significant effects of a proposed project and any feasible alternatives or mitigation measures that will avoid or substantially lessen such significant effects.  Cal. Pub. Res. Code §§ 21002, 21002.1, 21080(a), 21081.

184.   The SWRCB is a public agency within the meaning of CEQA.

185.   A 401 certification meets the requirements of a project that is subject to CEQA review.

186.   Defendants failed to do any environmental review under CEQA prior to, or in connection with the issuance of the Purported 401 Certification.  Defendant Sobeck nonetheless issued the Purported 401 Certification.

187.   CEQA violations are subject to a review for prejudicial abuse of discretion and review of whether the SWRCB's findings were supported by substantial evidence in light of the whole record. Cal. Pub. Res. Code §§ 21168, 21168.5.  By failing to undertake CEQA review, the SWRCB failed to proceed in the manner required by law and committed a prejudicial abuse of discretion.

**K.**      **Count XI: Action in Excess of Jurisdiction and Prejudicial Abuse of Discretion Due to Failure to Comply with the CWA and FPA (Cal. Civ. Proc. Code § 1094.5)**

188.      Plaintiff repeats and incorporates by reference every allegation in the preceding paragraphs.

189.      As alleged in Count I, the Purported 401 Certification violates section 401 of the CWA and exceeds the scope of the SWRCB's authority under section 401 of the CWA.

190.      As alleged in Count II, the Purported 401 Certification invades FERC's jurisdiction as reserved by the FPA and stands as an obstacle to FERC's exercise of its authority under the FPA.

191.      The Purported 401 Certification's conditions, which exceed the scope of section 401 of the CWA, are preempted by the Supremacy Clause.

192.      Based upon the foregoing, the SWRCB proceeded without, or in excess of jurisdiction and committed a prejudicial abuse of discretion under California Code of Civil Procedure section 1094.5 by failing to proceed in the manner required by law.

**L.**      **Count XII: Violation of California's Constitution and the Porter-Cologne Water Quality Control Act**

193.      Plaintiff repeats and incorporates by reference every allegation in the preceding paragraphs.

194.      As interpreted by the California Supreme Court, Article X, section 2 of the California Constitution requires that state decisionmakers assess the water costs of their decisions for competing uses of water and seek to minimize those costs.

195.      Porter-Cologne contains similar statutory mandates in Water Code sections 13000 and 13001.

196.    The Purported 401 Certification is inconsistent with the requirements above because it contains no assessment of its terms' effects on all demands being made of the waters of the Yuba River.

197.    The Purported 401 Certification failed to explain how its terms comply with Article X, section 2's and Porter-Cologne's fundamental policies.

198.    The Purported 401 Certification failed to consider relevant factors as required by Article X, section 2 of the California Constitution and Porter-Cologne; failed to explain why relevant data that was readily available from FERC's proceedings was disregarded; and failed to explain a rational connection between the facts found and the choice made, to the extent choices were made in light of the Purported 401 Certification's significant sub-delegations of future decisions to SWRCB staff.

199.    Based upon the foregoing, by issuing the Purported 401 Certification in violation of Article X, section 2 of the California Constitution and Porter-Cologne, Defendants failed to proceed in the manner required by law and committed a prejudicial abuse of discretion.

**M.    Count XIII:  Violation of the California Public Records Act**

200.    Plaintiff repeats and incorporates by reference every allegation in the preceding paragraphs.

201.    The CPRA requires state agencies of the State of California, including the SWRCB, to make disclosable public records available to the public promptly and without delay.

202.    The SWRCB's failure to respond or provide any responsive documents to NID's September 9, 2020 Public Records Act Request violates the SWRCB's statutory obligation to make disclosable public records available to NID promptly and without public delay.

203.    Plaintiff has exhausted all administrative remedies available to it by contacting SWRCB Counsel to request production of records. The SWRCB has provided no response to its initial request or subsequent inquiries regarding status.

## VIII.   PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully asks that this Court:

a.  Declare that the Purported 401 Certification includes requirements that exceed the State of California's authority under the CWA, are preempted by and inconsistent with the FPA, violate the U.S. Constitution, and violate California state law;

b.  Restrain Defendant Sobeck and the Defendant SWRCB Members from enforcing the Purported 401 Certification;

c.  Order Defendant Sobeck and the Defendant SWRCB Members to withdraw the Purported 401 Certification;

d.  Order Defendant Sobeck and the Defendant SWRCB Members promptly to notify FERC of this withdrawal;

e.  In the alternative, issue a writ in the nature of mandamus pursuant to 28 U.S.C. § 1651 directing all Defendants to vacate the Purported 401 Certification;

f.  Award attorneys' fees and costs pursuant to 42 U.S.C. section 1988(b), California Code of Civil Procedure section 1021.5, California Government Code section 800, and such other and further relief as may be determined appropriate; and

g.  Grant such other and further relief as may be just and proper.

Respectfully submitted this 4th day of December, 2020.

By: _Michael F. McBride_

Andrew McClure
MINASIAN, MEITH, SOARES, SEXTON &
COOPER, LLP
1681 Bird St.
Oroville, CA
Phone: 530-533-2885
amcclure@minasianlaw.com

Michael F. McBride, DC # 243998
Michael A. Swiger, DC # 367307
Jenna R. Mandell-Rice, DC # 1021549
Sharon L. White, DC # 997546

VAN NESS FELDMAN LLP
1050 Thomas Jefferson Street, NW
Washington, DC 20007
Phone: 202-298-1800
mfm@vnf.com
mas@vnf.com
jrm@vnf.com
slw@vnf.com

*Attorneys for Nevada Irrigation District*

**CERTIFICATE OF SERVICE**

I hereby certify that on December 4, 2020, I electronically filed the foregoing with the Clerk of the Court via the CM/ECF system, which will send notification to the attorneys of record in this case.

/s/ *Michael F. McBride*
Michael F. McBride, DC # 243998