1

2

3

4

5

6

7

8                            UNITED STATES DISTRICT COURT

9                    FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   NEVADA IRRIGATION DISTRICT,              No. 2:21-cv-00851-DJC-CKD

12               Plaintiff,

13        v.                                  ORDER

14   EILEEN SOBECK, in her official
     capacity as Executive Director of the
15   California State Water Resources
     Control Board, et al.,
16
                 Defendants.
17

18

19        Plaintiff brings this suit to challenge Defendants' issuance of a 401 certificate

20   pursuant to the Clean Water Act.  Presently before the Court is Defendants' Motion to

21   Dismiss Plaintiff's Complaint[1] on the grounds that this Court lacks jurisdiction to hear

22   Plaintiff's claims because the claims are not ripe, because Plaintiff lacks Article III

23   standing, and because the Eleventh Amendment immunizes Defendants from suit in

24   federal court.  For the reasons discussed below, Defendants' Motion to Dismiss is

25   GRANTED IN PART and DENIED IN PART.

26   _____

27   [1] In the same Motion, Defendants requested that the Court stay this case in the alternative.  As the Court
     previously granted a subsequent Motion to Stay, and recently lifted the stay after the resolution of a
     pending Ninth Circuit proceeding, the request to stay is denied as moot.  (*See* Order Granting Stay
28   (ECF No. 47) and Order Lifting Stay (ECF No. 70).)

                                            1

1

## I.      Background

2          This suit was brought by the Nevada Irrigation District, a special district formed

3    under the California Water Code, to adjudicate the State Water Resource Control

4    Board's ("the Water Board") authority to issue a certificate and corresponding

5    conditions under section 401 of the Clean Water Act as part of the renewal of the

6    District's license from the Federal Energy Regulatory Commission ("FERC") to operate

7    a hydroelectric dam project ("the project"). (*See* Compl. (ECF No. 1)  ¶¶ 1–2.)  The

8    Clean Water Act requires applicants for hydroelectric projects to seek a water quality

9    certificate ("401 certificate") from the state to certify compliance with the Clean Water

10   Act and state water quality standards.  (*Id.* ¶¶ 2, 78; Mot. to Dismiss (ECF No. 37-1) at

11   1.)  The state may impose conditions on the certificate to ensure compliance with both

12   state and federal water quality standards, and FERC must incorporate these standards

13   into the license it eventually issues to the applicant.  (Compl. ¶¶ 3, 13, 84–85.)  The

14   state agency responsible for issuing 401 certificates must issue the certificate within

15   one year of the application, or else its authority to issue a certificate and

16   corresponding conditions is waived.  (*Id.* ¶ 81.)

17          Plaintiff previously had a license to operate the project, which expired in 2013.

18   (*Id.* ¶ 26.)  After the expiration of Plaintiff's initial license, Plaintiff in 2011 filed to

19   relicense the project with FERC.  (*Id.* ¶ 32.)  FERC completed the requisite assessment

20   of the project and issued a Final Environmental Impact Statement in 2014.  (*Id.* ¶¶ 34–

21   35.)  While FERC was assessing Plaintiff's application, Plaintiff in 2012 filed an

22   application for the 401 certificate with the Water Board.  (*Id.* ¶ 37.)  At the request of

23   the Water Board, Plaintiff thereafter withdrew and resubmitted its application before

24   the one-year deadline for the Water Board to respond to the application every year

25   through 2018 in order to avoid the Water Board's waiver of the certificate.  (*Id.* ¶¶ 38–

26   42.)  On January 25, 2019, Defendant Sobeck denied Plaintiff's application without

27   prejudice.  (*Id.* ¶ 44.)

28   *////*

1     In 2019, the D.C. Circuit found that the Water Board had waived its right to

2   issue a 401 certificate to a different entity in a similar case where the Water Board

3   requested the entity withdraw and resubmit its application to avoid the one-year

4   deadline. (*Id.* ¶ 43.) Plaintiff then sought and secured a determination from FERC that

5   the Board had waived its right to issue a 401 certificate for Plaintiff's project for similar

6   reasons. (*Id.* ¶¶ 46–47.) The Board nevertheless issued a 401 certificate on August 14,

7   2020, without providing Plaintiff notice of opportunity to participate in proceedings,

8   and despite Plaintiff not having a currently pending application for the license as

9   Defendant Sobeck had previously denied Plaintiff's application without prejudice. (*Id.*

10  ¶¶ 45, 53–54.) This certificate contains conditions which Plaintiff alleges exceed the

11  Water Board's authority. (*Id.* ¶¶ 3, 58.) On September 10, 2020, Plaintiff filed a

12  Petition for Reconsideration of the decision to issue the certificate with the Water

13  Board. (*Id.* ¶ 61.) On December 4, 2020, Plaintiff filed this action challenging the

14  issuance of the certificate.

15     On August 14, 2020, prior to Plaintiff filing this suit, the Water Board filed an

16  action in the Ninth Circuit Court of Appeals challenging FERC's waiver determination.

17  (*Id.* ¶ 50.) The Court stayed the present proceedings pending the outcome of that

18  Ninth Circuit litigation. (*See* ECF Nos. 37 and 38.) On August 4, 2022, the Ninth

19  Circuit found that the Board had not waived its right to issue a certification under

20  section 401. *See Cal. State Water Res. Control Bd. v. FERC*, 43 F.4th 920 (9th Cir.

21  2022). Plaintiff filed a petition for a writ of certiorari with the U.S. Supreme Court,

22  which was denied on May 15, 2023. (*See* Order Lifting Stay (ECF No. 70.) The Court

23  thereafter lifted the stay on these proceedings. (*Id.*)

24     Plaintiff claims that the Water Board, and specifically Defendant Eileen Sobeck,

25  acted outside their authority under the Clean Water Act, violated various state laws

26  and regulations, violated Plaintiff's due process rights, and alleges that the Water

27  Board's exercise of authority is preempted by the Supremacy Clause. (Compl. ¶¶ 23–

28  40.)

1   **II.      Legal Standard for Motion to Dismiss**

2          A party may move to dismiss a complaint for "lack of subject matter jurisdiction"

3   under Federal Rule of Civil Procedure 12(b)(1).  Challenges to a plaintiff's Article III

4   standing are properly raised under a 12(b)(1) motion as standing is required for a

5   federal court to exercise jurisdiction.  *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598

6   F.3d 1115, 1122 (9th Cir. 2010); *Nat'l Fed'n of the Blind of Cal. v. Uber Techs., Inc.*, 103

7   F. Supp. 3d 1073, 1078 (N.D. Cal. 2015).  Ripeness and Eleventh Amendment

8   immunity are also properly raised under a 12(b)(1) motion.  *Id.*; *Pistor v. Garcia*, 791

9   F.3d 1104, 1111 (9th Cir. 2015).

10          Taking the allegations in the complaint as true, "the court must determine

11   whether a lack of federal jurisdiction appears from the face of the complaint itself."

12   *Nat'l Fed'n of the Blind*, 103 F. Supp. 3d at 1078.  "[The] party invoking the federal

13   court's jurisdiction has the burden of proving the actual existence of subject matter

14   jurisdiction."  *Thompson v. McCombe*, 99 F.3d 352, 353 (9th Cir. 1996); *Chandler*, 598

15   F.3d at 1122.

16   **III.     Discussion**

17          **A.  Ripeness for Review**

18          The ripeness doctrine is a prudential standing doctrine designed to prevent

19   courts from engaging in premature adjudication, and "to protect [administrative]

20   agencies from judicial interference until an administrative decision has been

21   formalized and its effects felt in a concrete way."  *Nat'l Park Hosp. Ass'n v. Dep't of*

22   *Interior*, 538 U.S. 803, 807 (2003) (quoting *Abbott Laboratories v. Gardner*, 387 U.S.

23   136, 148–149 (1967), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99,

24   105 (1977)).  To determine if an action is ripe for review a court must evaluate "(1) the

25   fitness of the issues for judicial decision and (2) the hardship to the parties of

26   withholding court consideration."  *Id.* at 808.

27   ////

28   ////

### i. Fitness for Review

An agency action is fit for review if "the issues presented are purely legal and the [agency action] at issue is a final agency action." *Assn. of Am. Medical Colleges v. U.S.*, 217 F.3d 770, 780 (9th Cir. 2000). While neither party contests that the issues presented are purely legal, they disagree about whether the 401 certificate is a final agency action. Defendant argues that Plaintiff's claims are not ripe for review because the Water Board is entertaining a petition for reconsideration of the 401 certificate, making the certificate not final until the outcome of those proceedings. Plaintiff counters that the certificate was a final agency action because it is not tentative or conditioned on any further proceedings, and that there are no currently pending reconsideration proceedings because the Water Board failed to accept or deny Plaintiff's petition for reconsideration within the prescribed time.

An agency decision is considered final if "its impact is sufficiently direct and immediate and has a direct effect on . . . day to day business." *Franklin v. Massachusetts*, 505 U.S. 788, 796 (1992) (quoting *Abbott Labs.*, 387 U.S. at 152). "The core question is whether the agency has completed its decisionmaking process, and whether the result of that process is one that will directly affect the parties." *Id.* "An agency action is not final if it is only the ruling of a subordinate official or tentative." *Id.* at 796–97; *see also Sequoia Forestkeeper v. U.S. Forest Serv.*, No. 09-CV-000392-LJO-JLT, 2010 WL 5059621, at *6 (E.D. Cal. Dec. 3, 2010), *opinion modified on reconsideration*, No. 09-CV-000392-LJO-JLT, 2011 WL 902120 (E.D. Cal. Mar. 15, 2011).

The finality of a 401 certificate is dependent on the state's procedure for issuing the certificates. In *Berkshire Environmental Action Team, Inc. v. Tennessee Gas Pipeline Company, LLC*, the First Circuit found that the 401 certificate was effectively a conditional certificate and not a final action under Massachusetts's scheme because the certificates are issued without a hearing, and parties have a guaranteed opportunity to oppose the requirements with a de novo review. 851 F.3d 105, 111–13

1    (1st Cir. 2017).  The Massachusetts certificate became final either after the time to

2    oppose passed or after the de novo review.  *Id.*  In contrast, in *Sierra Club v. W. Va.*

3    *Dep't of Env't Prot.*, the Fourth Circuit found that the issuance of a 410 certificate was a

4    final action where, under the West Virginia scheme, the decision to hold a hearing or

5    reconsider the certificate was at the discretion of the secretary.  64 F.4th 487, 500 (4th

6    Cir. 2023).  The California scheme more closely resembles the West Virginia scheme

7    in that the Water Board does not issue tentative or conditional certificates, and the

8    Water Board maintains discretion on whether to reconsider a certificate.  *See* Cal.

9    Water Code § 13330(a) ("The state board shall *order or deny* reconsideration on a

10   petition . . . ." (emphasis added)).  Because there is no guaranteed additional process,

11   the issuance of a 401 certificate is the culmination of the Water Board's

12   decisionmaking process.  Moreover, the Water Board submitted the 401 certificate to

13   FERC, further evincing that the certificate was a final agency decision.  (Compl. ¶ 56.)

14        Defendants also argue that the certificate "does not determine any legal rights

15   or create legal consequences because it has no legal effect unless and until the Ninth

16   Circuit vacates FERC's waiver order."  (Mot. at 5.)  This argument is moot now that the

17   Ninth Circuit has recently decided that the Board did not waive its authority to issue a

18   401 certificate, and vacated FERC's waiver order.  (*See* Order Lifting Stay (ECF No. 70)

19   (lifting the stay in this case because of the Ninth Circuit's ruling in *Cal. State Water Res.*

20   *Control Bd. v. FERC*, 43 F.4th 920 (9th Cir. 2022).)  As the certificate is not void

21   pursuant to waiver, it has a direct effect on the parties because, as Defendants

22   concede, "FERC must incorporate any Section 401 certification conditions as

23   mandatory conditions of any new FERC license for a given project."  (Mot. at 2.)

24        Finally, that the Water Board is entertaining the petition for reconsideration

25   does not make the certificate non-final where the time to act on the petition has

26   passed.  *Sackett v. EPA*, 566 U.S. 120, 127 (2012) (The "mere possibility that an agency

27   might reconsider [its action] . . . does not suffice to make an otherwise final agency

28   action nonfinal.")  Under California law, the Water Board has 90 days to grant or deny

1 reconsideration. *See* Cal. Water Code § 13330(a).  However, it has yet to make any

2 decision on whether to grant Plaintiff's petition for reconsideration despite over *three*

3 *years* having elapsed since Plaintiff filed the petition for reconsideration.[2]  And when a

4 California agency fails to comply with the statutory time limit for review of a decision,

5 the affected party may directly challenge the underlying action.  *California Corr. Peace*

6 *Officers Assn. v. State Pers. Bd.*, 10 Cal. 4th 1133, 1151 (1995).  "When there is no

7 assurance that the Department's decision will be reviewed, it 'for all practical purposes

8 has ruled definitively' on the matter."  *Sierra Club*, 64 F.4th at 500 (quoting *United*

9 *States Army Corps of Eng'rs v. Hawkes Co., Inc.*, 578 U.S. 590, 599 (2016)).  While

10 Defendants assert that they are in the process of responding to the request, the time

11 for their response has long passed.  Plaintiff "did not need to sit on [its] hands . . ."

12 while the Water Board "*might* have revisited the certification, before petitioning for []

13 review."  *Id.* (emphasis in original).  Accordingly, the 401 certificate is a final agency

14 action which is fit for judicial review.

15                              **ii.    Likelihood of Harm**

16         Plaintiff is likely to be harmed if the Court does not grant review.  The Supreme

17 Court has identified "modify[ing] any formal legal license" and creating legal

18 obligations as forms of legal harm.  *Ohio Forestry Ass'n, Inc. v. Sierra Club*, 523 U.S.

19 726, 733 (1998).  Now that the Ninth Circuit has vacated FERC's waiver order, the 401

20 certificate has legal effect and its conditions *must* be incorporated into the FERC

21 license, which is currently pending.  Although Defendants assert that there would be

22 no harm unless and until the allegedly unlawful conditions are actually incorporated

23 into the license, FERC is obligated to incorporate the conditions of the 401 certificate

24 as binding conditions in the license.  33 U.S.C. § 1341 (d) (any "requirement of State

25 law set forth in such certification . . . shall become a condition on any Federal license

26

27 ───────────────────────

[2] Plaintiff filed the Petition for Reconsideration on September 1, 2020, and filed the instant action on
December 4, 2020, after the 90-day period had elapsed.  (*See* Compl. at 41; Compl., Ex. 2 (ECF No. 1-
28 3) at 10.)

1 | or permit subject to the provisions of this section.")  Although there is always a

2 | possibility that FERC will deny the license, the fact that Plaintiff previously possessed a

3 | license for the same project, and that FERC has completed a Final Environmental

4 | Impact Statement and attempted to waive the 401 certificate supports a finding that

5 | FERC will likely grant the license.  When this occurs, the 401 certificate will have the

6 | effect of both modifying the license, and creating legal obligations with which Plaintiff

7 | will be required to comply.  There is thus a sufficient likelihood of harm if the Court

8 | defers review.

9 | The Board urges that the Court should defer review until the Water Board has

10 | an opportunity to reconsider the certificate.  However, based on the Water Board's

11 | failure to act on the petition for reconsideration within the statutory time frame, or

12 | within the subsequent three years, the mere fact the Board *might* someday reconsider

13 | the certificate is insufficient to show that harm is unlikely.  In *Alcoa Power Generating,*

14 | *Inc. v. F.E.R.C.*, however, the D.C. Circuit concluded that delaying the relicensing of a

15 | hydroelectric power project itself poses a sufficient hardship to the applicant because

16 | the authorized length of licenses for this type of project (30 to 50 years) reveals

17 | "congressional recognition that significant capital investments cannot be made in

18 | hydro power projects without the certainty and security of a multi-decade license."

19 | 643 F.3d. 963, 970 (D.C. Cir. 2011).  Thus, any delay, and therefore uncertainty, harms

20 | the entity investing in the project.  *Id.*  The *Alcoa* court found that this likely harm

21 | outweighed the possibility that the court may not need to address the issue, *id.*, and

22 | its reasoning counters against further delay in resolving this dispute.

23 | Accordingly, the Court concludes that the suit is ripe for decision.

24 | **B.  Article III Standing**

25 | Standing under Article III of the Constitution has three basic elements: the

26 | Plaintiff must have suffered (1) an injury in fact; (2) which is fairly traceable to or caused

27 | by the defendant's offensive conduct; and (3) which is likely to be redressed by a

28 | favorable decision.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992).  The

1    injury in fact element is satisfied by showing that the injury is both (a) concrete and

2    particularized and (b) actual or – where a plaintiff seeks injunctive relief –imminent.

3    *Id.* at 564; *Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983).  Defendants assert that

4    Plaintiff has not suffered an injury in fact because the conditions of the certificate

5    could change during the reconsideration process and because the conditions will not

6    be enforced against Plaintiff unless and until FERC incorporates them into a license for

7    the project.  Defendants also assert that Plaintiff's procedural injuries are insufficient to

8    establish injury-in-fact.  The Court disagrees.

9           The risk of future injury is sufficient for standing if it is "*certainly* impending."

10   *Coons v. Lew*, 762 F.3d 891, 897 (9th Cir. 2014), *as amended* (Sept. 2, 2014)

11   (emphasis in original).  Actual enforcement against a plaintiff is not required.  *Susan B.*

12   *Anthony List v. Driehaus*, 573 U.S. 149, 164 (2014).  Here, Plaintiff is facing an

13   impending injury sufficient to establish standing as to injunctive relief.  As discussed

14   above, Plaintiff's license to operate the project is currently pending with FERC, and

15   now that the 401 certificate has been issued to FERC, the conditions must be

16   incorporated into the license.  Once incorporated, those conditions will be mandatory

17   conditions of the FERC license.  Thus, once the license is issued, the allegedly unlawful

18   conditions will be imposed onto Plaintiff.  Plaintiff will need to alter its conduct and

19   expend funds to comply with the conditions it knows *today* will be a part of the

20   license. (Compl. ¶ 17.)  The mere potential that the Water Board may alter the terms

21   of the certificate does not negate standing; there is always a potential that a

22   defendant may choose to alter their conduct and moot a claim to injunctive relief.

23          Plaintiff has also alleged a sufficient past procedural injury.  A procedural injury

24   in and of itself is not sufficient unless there is a concrete harm associated with the

25   procedural injury.  *Tetra Tech EC, Inc. v. United States Env't Prot. Agency*, No. 20-CV-

26   08100-JD, 2022 WL 4372073, at *1 (N.D. Cal. Sept. 21, 2022).  Where a plaintiff is

27   alleging a procedural injury, they can establish injury-in-fact by showing (1) the agency

28   violated certain procedural rules; (2) these rules protect the plaintiff's concrete

1    interests; and (3) it is reasonably probable that the challenged action will threaten

2    their concrete interests.  *Citizens for Better Forestry v. U.S. Dep't of Agric.*, 341 F.3d

3    961, 969–70 (9th Cir. 2003).  Here, Plaintiff alleges that the Water Board engaged in

4    multiple procedural violations, including imposing conditions beyond the scope of its

5    authority and failing to provide Plaintiff with proper notice of the certification process.[3]

6    These procedural rules protect the Plaintiff's interest in operating the project without

7    expending unnecessary costs to comply with conditions that are not required by law.

8    Because FERC is certain to incorporate the conditions which were allegedly

9    developed in violation of the procedures, Plaintiff's interest in operating the project

10   without those conditions and associated costs will be threatened.

11         To the extent that Defendants are arguing that the harm is not traceable to

12   Defendants because FERC would ultimately enforce the conditions, this argument is

13   foreclosed by *Bennett v. Spear*, 520 U.S. 154 (1997).  *Bennett* concerned a biological

14   opinion issued by the Fish and Wildlife Service that, while not binding on the Bureau

15   of Reclamation, "alter[ed] the legal regime" to which the Bureau was subject.  *Id.* at

16   168–69.  The Court rejected the suggestion that there was no standing to sue the Fish

17   and Wildlife Service because the Bureau of Reclamation might disregard the

18   biological opinion, noting that an Article III injury included that "produced by

19   determinative or coercive effect upon the action of someone else."  *Id.*  Significantly,

20   the biological opinion at issue in *Bennett* was even less coercive than the certificate at

21   issue here because FERC *must* incorporate the certificate and impose the same

22   conditions contained therein as mandatory conditions.  Further, if the Court were to

23   find favorably for the Plaintiff and enjoin the certificate, the Plaintiff's injury would be

24   redressed because the conditions would not be incorporated into the license.

25

26   _____

[3] Plaintiff alleges both due process claims and statutory procedural violations.  Although the Court
below dismisses all of Plaintiff's claims except Count One under the Clean Water Act, Plaintiff alleges
27   that Defendants failed to comply with procedures required under the Clean Water Act including failing
to provide written notice that the Board was considering issuing the certificate, and acting outside the
28   authority granted by the Act by not responding to a pending application.  (Compl. ¶¶ 111–12.)

1        **C. Availability of Constitutional Claims**

2              Separately, Defendant asserts that as a state-created unit of government,

3   Plaintiff has no constitutional rights that it may assert against the state, and therefore

4   Plaintiff cannot have suffered a constitutional injury. *Williams v. Mayor of Baltimore*,

5   289 U.S. 36, 40 (1933) ("A municipal corporation, created by a state for the better

6   ordering of government, has no privileges or immunities under the Federal

7   Constitution which it may invoke in opposition to the will of its creator.").  In *City of San*

8   *Juan Capistrano v. California Public Utilities Commission*, the Ninth Circuit held that a

9   political subdivision "lack[s] standing to challenge state law on constitutional grounds

10  in federal court," and that this rule applies to a challenge to the conduct of an official

11  in an administrative proceeding, not only facial challenges.  937 F.3d 1278, 1280–81

12  (9th Cir. 2019).  Further, it applies this *per se* bar to any constitutional challenge,

13  including challenges under the Supremacy Clause.  *See Palomar Pomerado Health*

14  *Sys. v. Belshe*, 180 F.3d 1104, 1107–08 (9th Cir. 1999); *Burbank-Glendale-Pasadena*

15  *Airport Auth. v. City of Burbank*, 136 F.3d 1360, 1364 (9th Cir. 1998).

16              As a special irrigation district organized and operating pursuant to Cal. Water

17  Code §§ 20500 *et seq.*, Plaintiff is considered a political subdivision of the state.  *See*

18  *Palomar*, 180 F.3d at 1107 ("[A]ll public corporations exercising governmental

19  functions within a limited portion of the state—counties, cities, reclamation districts,

20  irrigation districts—are agencies of the state." (quoting 58 Cal. Jur.3d § 12)); *Tri-Dam v.*

21  *Frazier*, No. 1:20-CV-00408-SKO, 2022 WL 159562, at *8 (E.D. Cal. Jan. 18, 2022),

22  *aff'd*, No. 22-15246, 2023 WL 3193592 (9th Cir. May 2, 2023) (finding that irrigation

23  districts are public agencies).  Plaintiff asserts that the Ninth Circuit precedent only

24  applies to constitutional challenges based on state law rather than federal law.

25  However, the Ninth Circuit has stated that it is the identity of the parties, not the nature

26  of the claims, which determines whether the plaintiff has standing to bring federal

27  constitutional claims in federal court.  *See City of San* Juan, 937 F.3d at 1281; *Bd. of*

28  *Nat. Res. of State of Wash. v. Brown*, 992 F.2d 937, 942 (9th Cir. 1993) (holding that

1   school districts are more like corporate persons than state entities in finding that they

2   have standing to pursue constitutional claims).   Plaintiff therefore cannot assert

3   constitutional claims against the state or its agencies under Ninth Circuit precedent.

4          Plaintiff attempts to argue that it may bring these claims on behalf of its

5   constituents and assert the constitutional rights of those constituents.  However, the

6   Complaint does not describe how the constituents' rights are affected by the Water

7   Board's actions, and the Plaintiff's briefing fails to assess the third-party standing

8   requirements.  Plaintiff asserts that it supplies affordable water to its constituents but

9   fails to allege whether or how the Water Board's action will have an impact on the

10  constituents.  (Compl. ¶15.)  Instead, Plaintiff relies on two California cases, *Sanchez v.*

11  *City of Modesto*, 145 Cal. App. 4th 660, 675-77 (2006) and  *Cent. Delta Water Agency*

12  *v. State Water Res. Control Bd.*, 17 Cal. App. 4th 621, 630 (1993), to assert that the

13  rights of Plaintiff's constituents are "inextricably bound up" with the Plaintiff's duty to

14  supply water. (*See* Opp'n. at 11.)  However, neither of these cases assess whether a

15  water district has standing to sue on behalf of its constituents in federal court.  In fact,

16  *Sanchez* explicitly states that the third-party standing doctrine "is addressed to the

17  standing of plaintiffs to sue in federal court; and that we deal here neither with the

18  standing of plaintiffs nor with federal court."  Cal. App. 4th 676.  Moreover, in *Central*

19  *Delta*, the statute being challenged imposed fees directly on the constituents.  17 Cal.

20  App. 4th at 629.  Here, Plaintiff has not alleged such a direct impact.  Without any

21  federal caselaw in the Ninth Circuit allowing such a suit to proceed, nor allegations

22  about how the constituents' rights are at issue, the Court declines to find that Plaintiff

23  is asserting or may assert the rights of its constituents.

24         Accordingly, Plaintiff lacks standing to bring its due process and Supremacy

25  Clause claims against the state or its officials.  The Motion to Dismiss is GRANTED as

26  to Counts Two through Four with leave to amend to assert the rights of Plaintiff's

27  constituents.

28  *////*

**D. Eleventh Amendment Immunity**

Defendants argue that they are immune from suit under the Eleventh Amendment. "The Eleventh Amendment grants a State immunity from suit in federal court by citizens of other States, and by its own citizens as well." *Lapides v. Bd. of Regents*, 535 U.S. 613, 616 (2002). "[A] suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). A suit against a state official in their official capacity is "no different from a suit against the State itself," *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989), and a state official sued in their official capacity is entitled to Eleventh Amendment immunity. *Eaglesmith v. Ward*, 73 F.3d 857, 860 (9th Cir. 1995), *as amended* (Jan. 23, 1996). This is true regardless of the nature of the relief sought. *See Pennhurst*, 465 U.S. at 102.

The *Ex Parte Young* doctrine provides a limited exception to Eleventh Amendment immunity: a state official may be sued in federal court for prospective relief if the official's conduct violates federal law. *See Ex Parte Young*, 209 U.S. 123 (1908); *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 437 (2004). The doctrine is premised on the notion that a state cannot authorize an action that conflicts with federal law, and therefore a state official acting in such a manner is not acting on behalf of the state, and is not entitled to the state's immunity. *Pennhurst*, 465 U.S. at 102, 104. *Ex Parte Young* grants a narrow authority to federal courts which balances the constitutional immunity of the states with the supremacy of federal law. "[T]he *Young* doctrine has been accepted as necessary to permit the federal courts to vindicate federal rights and hold state officials responsible to 'the supreme authority of the United States.'" *Pennhurst*, 465 U.S. at 105 (quoting *Ex Parte Young*, 209 U.S. at 160).

Because the *Ex Parte Young* doctrine "rests on the need to promote the vindication of federal rights" and ensure "the supremacy of federal law," it is "inapplicable in a suit against state officials on the basis of state law." *Pennhurst*, 465

13

1    U.S. at 105–06.  Under *Pennhurst*, a state official sued for violation of state law is

2    immune from suit in federal court because there is no federal law to vindicate.

3                    **i.    Federal and State Law Claims**

4            Plaintiff brings four claims based on federal law: three claims alleging violations

5    of the federal Constitution, and one claims alleging violations of the Clean Water Act.

6    The Court above determined that Plaintiff cannot bring constitutional claims against

7    the state, leaving the claim based on the Clean Water Act, Count One, as Plaintiff's

8    only federal claim.  Because this claim is based in federal law, Plaintiff may bring suit in

9    this Court against the appropriate state officials under the *Ex Parte Young* exception.

10           Plaintiff's remaining claims, however, all allege violations of state law.  Plaintiff's

11   state law claims include the following: lack of jurisdiction to issue the certificate under

12   Cal. Code Regs. Tit. 23, §§ 3835–38 based on no pending application within the

13   meaning of Cal. Code Regs. Tit. 23 § 3831(b); improper delegation of authority to

14   Defendant Sobeck under Cal. Water Code §§ 175, 181, and 13160; lack of

15   transparency in violation of Cal. Gov't Code § 11120 *et seq.*; failure to conduct a fair

16   hearing, failure to consider relevant evidence, and acting in excess of jurisdiction and

17   abusing discretion in violation of Cal. Civ. Proc. Code § 1094.5; failure to conduct an

18   environmental review in violation of the California Environmental Quality Act, Cal. Pub.

19   Res. Code §§ 21005, 21168; violation of the California Constitution, Article X, section

20   2; violation of the Porter-Cologne Water Quality Control Act, Cal. Water Code

21   §§ 13000 and 130001; and violation of the California Public Records Act.

22           Courts have found that state laws may effectuate federal law such that they are

23   effectively "part of the federal law" and are an appropriate basis for suit under the *Ex*

24   *Parte Young* doctrine.  Where "the rights at issue were created by the State pursuant

25   to a federal invitation to implement a program that met certain minimum standards set

26   by Congress," those rights are federal in nature.  *See Bragg v. W. Va. Coal Ass'n*, 248

27   F.3d 275, 294-96 (4th Cir. 2001).  The state law at issue must have been implemented

28   to fulfill a federal objective and been given legal effect by a federal law or agency in

1   order to be "essentially federal in character."  *See Living Lands, LLC v. Cline*, 591 F.

2   Supp. 3d 79, 94 (S.D. W. Va. 2022).

3       For example, in *Living Lands v. Cline*, the Southern District of West Virginia held

4   that  a claim pursuant to the West Virginia Solid Waste Management Act fell under the

5   *Ex Parte Young* exception because the standards adopted by the state had been

6   approved by the Environmental Protection Agency ("EPA") and were given legal effect

7   pursuant to the Resource Conservation and Recovery Act ("RCRA") such that the state

8   standards were essentially federal law.  *Id.*; *cf. Ashoff v. City of Ukiah*, 130 F.3d 409

9   (9th Cir. 1997) (state waste standards which are adopted pursuant to RCRA are federal

10  in nature because the state is adopting the federal criteria).  Similarly, in *Arkansas v.*

11  *Oklahoma*, the Supreme Court found that "state water quality standards –

12  promulgated by the States with substantial guidance from the EPA and approved by

13  the Agency – are part of the federal law of water pollution control."  503 U.S. 91, 110

14  (1992); *see also Bragg*, 248 F.3d at 294-96 ("the Clean Water Act's regulations

15  'effectively *incorporate[d]*' State law into the unitary federal enforcement scheme,

16  making State law, in certain circumstances, federal law.").  Thus, state standards that

17  are implemented and approved pursuant to federal law are effectively federal law,

18  and fall under the *Ex Parte Young* exception.

19      Here, Plaintiff's state law claims, as articulated above, do not seek to enforce

20  compliance with water quality standards under state law; rather, each of Plaintiff's

21  state law claims allege a procedural violation.  Unlike with water quality standards, the

22  EPA does not provide detailed regulations or guidance on the procedure that must be

23  adopted by the state in order to issue a 401 certificate.  Moreover, there is no

24  indication that any relevant federal agency reviewed or approved California's

25  procedures, or that they were adopted by a federal agency.  Each of the state laws at

26  issue operate independently of the Clean Water Act and were not implemented for

27  the purpose of fulfilling a federal objective.  Rather, the laws are generally applicable

28  to any state agency action which touches state water policy, and some are even more

1   broadly applicable to any state agency action.  Although Plaintiff broadly claims that

2   the alleged violations "occurred in Defendants' process of implementing a federal

3   program," Plaintiff has failed to establish how the underlying state laws could be

4   construed as essentially federal law.  *Pennhurst*, therefore, bars Plaintiff's state law

5   claims against all Defendants.

6        Plaintiff further attempts to argue that the reasoning in *Pennhurst* does not

7   apply to Defendant Sobeck because she acted outside the scope of her authority

8   under state law.  This is a misreading of *Pennhurst* and the *Ex Parte Young* doctrine.

9   Where a state official acts outside their authority because they are acting against

10  *federal law*, the federal court may then step in to ensure conformance with federal law.

11  *Pennhurst*, 465 U.S. at 105 ("[T]he *Young* doctrine . . . permit[s] the federal courts to . . .

12  hold state officials responsible to [federal law].").  This rationale does not apply where

13  the official is acting outside her authority authorized by state law, because the Court

14  cannot order a state official to conform with state law.  "[I]t is difficult to think of a

15  greater intrusion on state sovereignty than when a federal court instructs state officials

16  on how to conform their conduct to state law." *Id.* at 106.  This is precisely the relief

17  Plaintiff is seeking, and therefore directly prohibited by *Pennhurst*.  Defendant Sobeck

18  is immune to suit in federal court on the state law claims.

19            **ii.    Individual Defendants**

20       The *Ex Parte Young* exception only applies to state officials and no other state

21  entity.  *Alabama v. Pugh*, 438 U.S. 781, 781 (1978) (per curiam).  In addition, the state

22  official being sued must have "direct authority over and principal responsibility for

23  enforcing" the law at issue, not mere general law enforcement ability.  *Nat'l Audubon

24  Soc'y, Inc. v. Davis*, 307 F.3d 835, 847 (9th Cir.), *opinion amended on denial of reh'g*,

25  312 F.3d 416 (9th Cir. 2002) (finding that the state Governor, who only has general

26  enforcement ability, was immune, but allowing suit to proceed against the Director of

27  the California Department of Fish and Game).

28  *////*

16

1          Here, Plaintiff has filed suit against seven defendants, the California State Water

2   Resources Control Board itself and six Water Board employees in their official

3   capacities: Eileen Sobeck, Executive Director; E. Joaquin Esquivel, Chair;  Dorene

4   D'Adamo, Vice Chair; and three board members, Tam M. Doduc, Sean Maguire, and

5   Laurel Firestone.  The California State Water Resources Control Board is a state entity

6   and is therefore entitled to immunity and must be dismissed as a Defendant.  *In re*

7   *Lazar*, 237 F.3d 967, 971 (9th Cir. 2001) (finding that the California State Water

8   Resources Board is an arm of the state); *Steshenko v. Gayrard*, 44 F. Supp. 3d 941, 950

9   (N.D. Cal. 2014) (finding that the *Ex Parte Young* doctrine did not apply to the Board of

10  Trustees).  Plaintiff alleges that the Water Board members, including Defendants

11  Esquivel and D'Adamo, delegated authority to act on 401 certificates to Defendant

12  Sobeck, (Compl. ¶¶ 18, 20–24), that Defendant Sobeck issued the certificate on behalf

13  of the Water Board (*id*. ¶¶ 111–13), and that she did so without quorum of the Water

14  Board (*id*. ¶ 8).  The remaining Count, Count One, only challenges the actions

15  Defendant Sobeck took.  (*Id*. ¶¶ 110–121.)  As alleged in the Complaint, the individual

16  board members, including the Chair and Vice Chair, Defendants Esquivel and

17  D'Adamo, therefore do not have the requisite authority over the decision to issue the

18  certificate and are entitled to immunity as to Count One.  *See Stewart v. Nottoway*

19  *Cnty.*, No. 3:22-CV-635-HEH, 2023 WL 4849936, at *8 (E.D. Va. July 28, 2023)

20  (individual Board Members cannot be sued where they do not have unilateral

21  authority to act).

22          Defendant Sobeck attempts to argue that *Ex Parte Young* cannot apply to her

23  because she has not threatened to imminently enforce the 401 certificate.  However,

24  the Ninth Circuit has "decline[d] to read additional 'ripeness' or 'imminence'

25  requirements into the *Ex Parte Young* exception to Eleventh Amendment immunity in

26  actions for declaratory relief beyond those already imposed by a general Article III

27  and prudential ripeness analysis."  *Nat'l Audubon Soc'y*, 307 F.3d at 847.  As

28  discussed above, Defendant Sobeck has already issued the certificate to FERC,

1    making the harm sufficiently imminent and ripe.  Accordingly, Defendant Sobeck is

2    not entitled to immunity.

3    **IV.    Conclusion**

4          For the above reasons, IT IS HEREBY ORDERED that Defendants' Motion to

5    Dismiss, ECF No. 37, is GRANTED IN PART and DENIED IN PART as follows:

6       1. Because Plaintiff lacks standing as a political subdivision to brings constitutional

7          claims against the state or its officials, the Motion to Dismiss is GRANTED IN

8          PART as to Counts Two through Four with leave to amend to assert the

9          constitutional rights of Plaintiff's constituents;

10      2. Under the Eleventh Amendment, Defendants are entitled to immunity for the

11         state law claims asserted in the Complaint.  Accordingly, the Motion to Dismiss

12         is GRANTED IN PART as to Counts Five through Ten;

13      3. Because Defendants except Defendant Sobeck are immune to suit on the

14         remaining claim, the Motion to Dismiss is GRANTED IN PART as to all

15         Defendants except for Defendant Sobeck; and

16      4. The only remaining claim is Count One against Defendant Sobeck.

17         Any amended Complaint to revive Counts Two through Four must be filed

18   within 30 days of the issuance of this order.

19

20         IT IS SO ORDERED.

21   Dated:   **December 6, 2023**

22                                                Hon. Daniel J. Calabretta
                                                  UNITED STATES DISTRICT JUDGE

23

24

25   DJC2 – NID21cv00851.mtd

26

27

28

18